IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERROL D. FULFORD-EL,
      Plaintiff,

v.                                   CIVIL ACTION NO. RDB-17-1989

WARDEN OF BALTIMORE CENTRAL
  BOOKING & INTAKE
      Defendant.

*****

## **MEMORANDUM OPINION**

On July 14, 2017, the Court received for filing Errol D. Fulford-El's civil rights Complaint filed pursuant to 42 U.S.C. § 1983. Counsel for Defendant has filed a Motion to Dismiss and/or for Summary Judgment.[1] ECF No. 11. Fulford-El, who has been released from confinement,[2] has not filed an Opposition.[3] No hearing is needed to resolve the question as to whether Fulford-El is entitled to relief in this case. *See* Local Rule 105.6 (D. Md. 2016).

### **Factual Background**

Fulford-El states he was detained at the Baltimore Central Booking and Intake Center ("BCBIC") in 2017. He claims that on May 6, 2017, he was placed in "5 North Mental Health-1Cell 71A" and was stripped and placed in isolation with another naked detainee. Fulford-El alleges that he was so housed for seven days. He asserts that "continuously" at night his naked cellmate stood close to his bed. Fulford-El states that when he complained about being double-celled naked with

---

[1] The Clerk shall modify the docket to substitute the name of Acting Warden Dionne Randolph for that of Defendant "Warden of Baltimore Central Booking & Intake."

[2] Upon the unopposed assertion of Defendant Randolph, Fulford-El was released from detention on October 20, 2017. ECF No. 11, p. 1 at n.1.

[3] On January 2, 2018, notice of Defendant's dispositive filing was sent to Fulford-El pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). ECF No. 12. On April 13, 2018, Fulford-El's Motion for Extension of Time was granted to May 14, 2018. Fulford-El has not filed an Opposition.

another detainee, he was informed by physicians that "this was there [sic] policy." ECF No. 1, pp. 2-3

Fulford-El avers that he was placed on suicide watch for his depression and was held there for 31 days. He further complains that he was denied legal mail sent by the federal court in a previous civil rights matter, which was dismissed for the failure to file a court-ordered supplemental complaint. Fulford-El asserts that he did not receive the Court Order requiring him to supplement and only became aware of the dismissal on June 26, 2017. He further asserts that he was denied pen and paper to write to the Court. ECF No. 1, p. 3.

Fulford-El next claims he was denied toothpaste, a toothbrush, a wash cloth, soap, and towels. and had no out-of-cell recreation, but one hour for 31 days. He alleges that his cell light was kept on for 24 hours a day and he could not sleep. ECF No. 1, p. *.

Fulford-El maintains he was denied proper medical treatment for a broken hand that was injured when he was arrested. He claims he was given Motrin, his right hand was x-rayed and broken in 5 places, has now healed in a deformed manner, and he still feels pain. *Id.* He also complains that he is allergic to soybean and soy byproducts and BCBIC refuses to stay within his medical diet. *Id.*

Finally, Fulford-El complains there is no legal library and he cannot order law books to conduct research. *Id.*

Fulford-El seeks punitive and monetary relief, as well as injunctive relief to be transferred to another prison facility. *Id.*, p. 4.

In her Motion to Dismiss and/or for Summary Judgment, submitted with exhibits, Acting BCBIC Warden Dionne Randolph argues that the Complaint should be dismissed as: (1) Fulford-El failed to fully exhaust the administrative remedy procedure (ARP) grievance process available to

detainees at BCBIC as required pursuant to 42 U.S.C. § 1997e; (2) Randolph had no personal involvement, giving rise to her liability under 42U.S.C. § 1983; (3) Randolph is immune from liability under the Eleventh Amendment for actions taken in her official capacity; and (4) Randolph is entitled to qualified immunity. ECF No. 11. Defendant further maintains that Fulford-El's request for injunctive relief should be dismissed as moot as he has been released from detention.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Because Fulford-El is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the Court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

Fulford-El has been challenged to refute Randolph's arguments and has not done so. First, as Fulford-El has been released from detention, his injunctive relief request to be transferred to the Jessup Correctional Institution has been rendered moot. Where injunctive relief is requested in an inmate's Complaint, it is possible for events occurring subsequent to the filing of the Complaint to render injunctive relief moot. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir.1987) (transfer of plaintiff prisoner); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir.1991) (transfer of plaintiff prisoner); *Salahuddin v. Coughlin*, 591 F.Supp. 353, 362 (S.D. N.Y. 1984) (transfer and release of plaintiff prisoners).

Next, the affirmative defense of administrative exhaustion must be addressed before the Court may examine the merits of Fulford-El's claims. The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

Defendant raises the affirmative defense that Fulford-El has failed to exhaust his administrative remedies. If his claims have not been properly presented through the grievance process they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407

F.2d 674, 682 (4th Cir. 2005).

Nevertheless, a claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining"[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But, the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross v. Blake*, 136 S.Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not

6

exhaust remedies if they are not 'available.'"[4] *Id.* at 1855. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

The Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, Fulford-El is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The unopposed record presented to the Court shows that Fulford-El filed three grievances regarding the claims raised in this complaint. Fulford-El filed a Step I[5] grievance on or about March 27, 2017, complaining that he had been denied medical attention for his broken hand and additionally noted that he had been "denied access to the legal library." On June 30, 2017, BCBIC

---

[4] The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

[5] The grievance process at BCBIC involves a four step process found under Pre-Trial Detention and Services Directive No. 180-1 (dated June 20, 2008). In Step I, the detainee files a Residential Complaint Form; in Step II, the detainee files a Motion for Grievance Committee form; in Step III, the detainee files a Motion to Appeal to Warden form; and in Step IV, the detainee files a Motion for Leave to Appeal to the Assistant Commissioner.

staff received Fulford-El's Step I grievance complaining that the dietary department refused to comply with his medical order for a "no soy diet." On July 17, 2017, another Step I grievance was received, registering a complaint that Fulford-El had been placed naked in the Mental Health Unit in an isolation cell with another naked inmate and denied his legal mail, soap, toothbrush, and toothpaste. ECF No. 11-2, Harris Aff., ECF No. 11-3, ECF No. 11-4 and ECF No. 11-5. Defendant states that no subsequent Step II, Step III, or Step IV grievances were filed by Fulford-El. Thus, it remains uncontroverted that Fulford-El failed to exhaust his administrative remedies at BCBIC and his Complaint is subject to dismissal for non-exhaustion.

Alternatively, the Court observes that the sole Defendant named in this Complaint is the BCBIC Warden. Acting Warden Randolph maintains that the Complaint fails to raise any personal liability claims against her. This is correct. The Court observes that in order for liability to exist under 42 U.S.C. § 1983, the defendant must be personally involved in the alleged violation. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Under *Shaw*, supervisory liability may attach under § 1983 if a plaintiff can establish three elements: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices", and (3) an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* at 799 (citations omitted).

No allegation demonstrates the supervisory liability of Acting Warden Randolph with regard to the First and Fourteenth Amendment concerns at issue here. *See Shaw*, 13 F.3d at 799. There is no evidence that Randolph had actual or constructive knowledge of alleged problems with Fulford-

El's housing, legal mail, hygiene items, or medical treatment. The liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Bayard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Fulford-El's claim with regard to Randolph is based on her supervisory position. She does not appear to have been personally involved in the issues presented here, or to have had actual or constructive knowledge thereof. Accordingly, Acting Warden Randolph is entitled to summary judgment as a matter of law.

## Conclusion

For the aforementioned reasons, Defendant's court-construed Motion for Summary Judgment IS GRANTED. Judgment IS ENTERED in favor of Defendant Randolph. A separate Order effecting the ruling made in this Memorandum Opinion is being entered herewith.

Dated: May 16, 2018

_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE